# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MICHAEL T. RAFFIN, | ) |
| Plaintiff, | ) ) ) ) Case No. 01-C-6081 ) Magistrate Judge Sidney I. Schenkier |
| vs. | ) ) |
| JO ANNE B. BARNHART, Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

David A. Bryant, counsel for plaintiff, Michael T. Raffin, has filed a petition for an award of attorney's fees pursuant to the Social Security Act, 42 U.S.C. § 406(b)(1). In the same motion, Mr. Bryant seeks an award of fees, on behalf of Mr. Raffin, under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, as well as a Rule 58 final judgment (doc. # 14).

After careful review of the parties' submissions, the Court grants Mr. Bryant's petition for fees, pursuant to Section 406(b)(1), in the amount of $ 17,520.00; awards EAJA fees to plaintiff in the amount of $ 3,435.00; and directs the entry of a Rule 58 judgment.

**I.**

We begin with a brief overview of the controlling legal principles. There are two sources for obtaining attorneys' fees in cases where a claimant obtains past-due benefits as a result of a favorable decision by the Commissioner of Social Security. The primary source for obtaining fees is Section 406, which allows a claimant's attorney to collect up to 25 percent of the award of past-due benefits obtained by a claimant. Those fees are paid out of the claimant's award of past-due benefits.

The second source for obtaining fees is EAJA, which permits a federal court to award attorneys' fees to a prevailing party, such as a claimant who wins a favorable decision from the SSA. Unlike fees under Section 406, EAJA fees are payable from the public fisc, rather than the claimant's own pocket. *See Gisbrecht v. Barnhart*, 535 U.S. 789, 796 (2002). We will begin our review of these sources for fees with Section 406.

### A.

Section 406 has a two-part structure. For work performed in the Social Security Administration, Section 406(a) governs the award of fees. For work performed in federal court, Section 406(b). We discuss each of those provisions below.

### 1.

Section 406(a)(1) provides that where the Commissioner of Social Security

> makes a determination favorable to the claimant, the Commissioner shall, if the claimant was represented by an attorney in connection with such a claim, fix (in accordance with the regulations prescribed pursuant to [§406(a)(2)(A)] a reasonable fee to compensate such attorney for the services performed by him in connection with such claim.

42 U.S.C. § 406(a)(1). Section 406(a)(1) controls when there is no contingency fee agreement and the Commissioner must determine a "reasonable fee" without the benefit of the parties' prior agreement on fees. Section 406(a)(2)(A) controls when there is a contingency fee agreement. It states in relevant part:

> In the case of a claim of entitlement to past-due benefits under this sub chapter, if –
>
> (i) an agreement between the claimant and another person regarding any fee to be recovered by such person to compensate such person for services with respect to the claim is presented in writing to the Commissioner of Social Security prior to the time of the Commissioner's determination regarding the claim,

2

(ii) the fee specified in the agreement does not exceed the lesser of –
(I) 25 percent of the total amount of such past-due benefits . . . ,
(II) $5,300, and
(iii) the determination is favorable to the claimant, then the Commissioner of Social Security shall approve that agreement at the time of the favorable determination, and . . . the fee specified in the agreement shall be the maximum fee.

42 U.S.C. § 406(a)(2)(A) (2004).

Thus, irrespective of whether there is a contingency agreement, Section 406(a) imposes a cap on attorneys' fees that an attorney may be paid for work performed in the administrative process. In no event may the attorney be awarded the lesser of $5,300.00, or 25 percent of the award of past-due benefits.

### 2.

Section 406(b) governs payment out of a claimant's past-due benefits for attorneys' fees incurred based on an attorney's work in federal court. Section 406(b) states in relevant part:

> (1)(A) Whenever a court renders a judgment favorable to a claimant under this subchapter who was represented before the court by an attorney, the court may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment, and the Commissioner of Social Security may, . . . certify the amount of such fee for payment to such attorney out of, and not in addition to, the amount of such past-due benefits. In case of any such judgment, no other fee may be payable or certified for payment for such representation except as provided in this paragraph.

42 U.S.C. § 406(b)(1)(A). Like Section 406(a)(1), Section 406(b)(1)(A) provides that no attorneys' fee award may exceed 25 percent of a claimant's past due benefits; the statute leaves it to courts to determine what constitutes a "reasonable fee" within that 25 percent cap.

The method for determining what constitutes a reasonable fee under Section 406(b)(1) depends on whether the claimant and the attorney have entered into a contingency fee agreement.

3

In the absence of a contingency fee agreement, courts typically use a "lodestar" approach, multiplying the reasonable amount of attorney time devoted to the case by the attorney's normal hourly billing rate, and then applying various factors to decide whether to enhance or reduce that amount. *Meade v. Barnhart*, 218 F.Supp. 2d 811, 812-13 (W.D. Va. 2002) (where, as here, a contingency fee agreement between parties was limited to agency procedures, the court resorted to lodestar method for determining a reasonable fee under § 406(b)).

Where there is a contingency agreement in place that provides for attorneys' fees not to exceed 25 percent of the past-due benefits award, the contingency fee agreement is the starting point of the fee analysis. But, courts then must test the fee amount that would be generated by the contingency fee agreement for reasonableness, to decide if it must be reduced "based in the character of the representation and the results the representative achieved." *Gisbrecht*, 535 U.S. at 808. The hours spent by the attorney and his/her normal hourly rate may be considered "as an aid to the court's assessment of the reasonableness of the fee yielded by the fee agreement." *Id.*[1]

## B.

Awards under EAJA are governed by the following provisions, which state:

> A court may award reasonable fees and expenses of attorneys . . . to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. The United States shall be liable for such fees and expenses . . . .

---

[1] Prior to *Gisbrecht*, a number of courts applied the lodestar analysis even in the presence of a contingency fee agreement. *See Gisbrecht*, 535 U.S. at 799. The Supreme Court rejected that approach in *Gisbrecht*, holding that Section 406(b)(1) "does not displace contingency-fee agreements" within the 25 percent statutory ceiling, but "instructs courts to review for reasonableness fees yielded by those agreements." *Id.* at 808-09. *Gisbrecht* addressed only the situation where the attorney and claimant have entered into a contingency fee agreement; thus, *Gisbrecht* does not affect the manner in which courts determine a reasonable fee in the absence of such an agreement. *See Meade*, 218 F.Supp. 2d at 812-13; *Thomas v. Barnhart*, 1:02 CV 00198, 2005 WL 894886, *1-2 (W.D. Va. Apr. 18, 2005).

28 U.S.C. § 2412(b). And,

> A party seeking an award of fees and other expenses shall, within 30 days of final judgment in the action, submit to the Court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under that subsection, and the amount sought, including an itemized statement from any attorney or expert witness representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed. The party shall also allege that the position of the United States was no substantially justified. Whether or not the position of the United States was substantially justified shall be determined on the basis of the record (including the record . . . by the agency upon which the civil action is based) which is made in the civil action for which fees and other expenses are sought.

28 U.S.C. § 2412(d)(1)(B). Additionally, EAJA awards are limited by the following provision, which states:

> attorneys fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved justifies a higher fee.

28 U.S.C. § 2412(d)(1)(D)(2)(A)(ii); *see also Gisbrecht*, 535 U.S. at 796 (2002).

### C.

Section 406(a), Section 406(b), and EAJA all combine to affect the total amount of attorneys' fees that may be awarded, and the sources of their payment.

*First*, "the combination of § 406(a) and § 406(b) can never exceed 25 percent of the retroactive benefits" due to a claimant. *Kopulos v. Barnhart*, 318 F. Supp.2d 657, 660 (N.D. Ill. 2004). *Second*, any awards under EAJA must serve as an offset against the Section 406(b) award for the same work, namely, work performed in federal court. *Gisbrecht*, 535 U.S. at 796. *See also Kopulos*, 318 F.Supp. at 663. The Supreme Court has explained the interplay between EAJA and Section 406 like this:

> Congress harmonized fees payable by the Government under EAJA with fees payable under § 406(b) out of the claimant's past-due Social Security benefits in this manner: Fee awards may be made under both prescriptions, but the claimant's attorney must "refun[d] to the claimant the amount of the smaller fee." Thus, an EAJA award offsets an award under Section 406(b), so that the [amount of the total past-due benefits the claimant actually receives] will be increased by the . . . EAJA award up to the point the claimant receives 100 percent of the past-due benefits.

*Gisbrecht*, 535 U.S. at 796.

What this means is that where an attorney is awarded fees under EAJA and Section 406(b) for the same work, the amount that the claimant has to pay the attorney out of the past-due benefits is reduced by the amount of the EAJA award. The practical effect of the EAJA offset and the 25 percent cap of past-due benefits under Section 406 (which combines awards under Section 406(a) and (b) to reach the cap) is an intentional limitation on the amount of fees an attorney can collect directly from a claimant out of past-due benefits. *See Cora-Silva v. Secretary of HHS*, 642 F.Supp. 931 (D. Mass. 1986) (practice of SSA in offsetting award of past-due benefits by the amount of other benefits received by the claimant before awarding a percentage of net figure as attorney's fees is in accordance with congressional policy of ensuring that claimant retains largest share of award . . . .).

## II.

Having outlined the applicable legal framework, we will now briefly summarize the relevant facts and procedural history. However, at the threshold, we point out that there is no evidence of a written contingency fee agreement between Mr. Bryant and Mr. Raffin that governs the award of fees for representation in federal court, under Section 406(b). Rather, the contingency fee agreement submitted by the plaintiff (Pl.'s Mem., Ex. A, 03/17/97 Fee Agreement at 1), only governed representation by Mr. Bryant during the administrative proceedings. This agreement specifically stated, in connection with the administrative proceedings, that Mr. Raffin's attorney could "request

approval from the Social Security Administration to charge a fee of more than $4,000.00 so long as it [did] not exceed 25% of the total retroactive benefits. . . ." (Pl.'s Mem., Ex. A). The Agreement further stated that if Mr. Raffin "want[ed] to go above [the] administrative level with [his] attorney's help and have a court review the action of the Social Security Administration, a new supplemental agreement [would] have to be negotiated" (*Id.* at 2).

Mr. Bryant has offered no evidence of a supplemental fee agreement that would apply to work done in federal court. Without evidence of a controlling fee agreement, the following facts are relevant and material to our determination of Mr. Bryant's Section 406(b) fee using the lodestar as a starting point.[2]

### A.

Mr. Bryant has represented Mr. Raffin at the court and administrative levels since Mr. Raffin's first applications for Disability Insurance Benefits ("DIB"), pursuant to Title II of the Social Security Act, 42 U.S.C. § 406(b)(1), were filed in 1990 and 1991. Those applications were denied, and Mr. Raffin did not pursue appeals.

In 1995, Mr. Raffin filed a new application alleging disability since October 13, 1989. After initial level denials, Mr. Raffin appealed the denials to the SSA Appeals Council. The Appeals

---

[2]We note on this point that Mr. Bryant has submitted an affidavit by Mr. Raffin indicating that: (1) Mr. Raffin entered into a contingency fee agreement with Mr. Bryant for representation "in my application for disability benefits"; and (2) he agreed to pay Mr. Bryant 25 percent of his past-due benefits; (3) he has sent Mr. Bryant 25 percent of his past-due benefits; and (4) he "support[s]" Mr. Bryant's "application for his 25% fee." (Pl.'s Reply, Ex. A). The Court finds that this affidavit does not have the power to change the simple fact that there was no agreement between Mr. Raffin and Mr. Bryant for court work prior to the performance of that work. Just as Mr. Raffin's disapproval of Mr. Bryant's work after-the-fact could not prevent an agreed upon fee award if there had been such a contractual agreement, so, too, Mr. Raffin's "support" of Mr. Bryant's "application for his 25% fee" does not persuade the Court that there is a governing contingency fee agreement here.

For this reason the supplemental authority cited by Mr. Bryant, *Schulenburg v. Barnhart*, 01 C 5396 (N.D. Ill May 18, 2005) (Minute Order), is inapposite, as that ruling involved a situation where there was a contingency fee agreement.

Council remanded the case to the Administrative Law Judge ("ALJ") with an order to send Mr. Raffin to a consultative examination. This was not done and Mr. Raffin's claim was again denied, after a hearing, and then appealed to the Appeals Council, which denied review. That decision became the final decision of the Commissioner.

Mr. Raffin then filed a complaint, appealing this decision, in this court on August 8, 2001. Mr. Bryant, representing Mr. Raffin, filed a motion for summary judgment with a supporting memorandum in support of this appeal. Without submitting a written response, the Government entered into a voluntary stipulation with Mr. Raffin, agreeing that this Court should remand the case to the Commissioner for further proceedings before the ALJ. This Court agreed to enter a sentence four remand pursuant to that stipulation, and we ordered the Clerk of the Court to terminate the case. However, a Rule 58 judgment was never entered.

In the meantime, the parties agreed that Mr. Raffin was entitled to file a petition for attorney's fees under the EAJA for $3,435.00, representing 21.9 hours of legal services in this court between August 8, 2001 and the date of remand, December 6, 2001. The Government has not challenged this request. The EAJA motion, however, has not yet been ruled on.

A remand hearing was held before an ALJ on September 18, 2003, and a favorable decision was issued on January 30, 2004. Mr. Raffin was found disabled as of October 1, 1989, based on his original 1991 application. The parties agree that the amount of past due benefits awarded to Mr. Raffin was $139,550.60. A fee request was submitted to the ALJ under 42 U.S.C. § 406(a)(3), and the Commissioner awarded Mr. Bryant the amount of $5,300.00 for his representation of Mr. Raffin during administrative proceedings, the maximum fee available under Section 406(a)(1).

## III.

Mr. Bryant now "seeks a fee authorization in the amount of $28,262.65, . . . since counsel has already received a fee of $5,300.00 for over 94 hours of work before the Agency" pursuant to Section 406(b) (Pl.'s Mem. at 6, ¶ 10). Mr. Bryant also requests an EAJA award of $3,435.00, which he recognizes must be "offset from this amount [$28,262.65]."

The Government does not contest the number of hours Mr. Bryant proposes was spent on federal court work (21.9). Nor does the Government quarrel with the hourly rate Mr. Bryant claims, or total amount Mr. Bryant seeks under EAJA ($3,435.00) – even though simple division reveals that Mr. Bryant is seeking approximately $156.85 per hour, which is above the statutory maximum of $125.00. Neither party addresses special factors warranting this increase. In addition, the Government does not argue that the Commissioner's position in the agency was "substantially justified" so as to preclude an EAJA fee.

Given this background, we now turn to an analysis of the award of fees the Court determines is "reasonable" under Section 406(b). We will begin with the Section 406(b) award.

### A.

Section 406(b) permits a court to award up to a maximum of 25 percent of a claimant's past due benefits as reasonable attorney's fees for work in federal court. Using the stipulated total past due benefit amount of $139,550.60, 25 percent of that amount equals $34,887.65. This is the maximum amount of fees Mr. Bryant can receive under Section 406 and EAJA for the same work.

Given the absence of a contingency fee agreement, we begin by calculating the lodestar. Mr. Bryant has submitted that his non-contingent billing rate, the rate he uses when he is not assuming any risk of loss, is $ 400.00. The Court finds this to be a reasonable rate by Chicago standards for

9

an attorney with Mr. Bryant's experience in his field (Pl.'s Reply, Ex. B (Nationwide Billing Rates from NATIONAL LAW JOURNAL)). Thus, using lodestar, we multiply that number by the 21.9 hours submitted by Mr. Bryant as the statement of his federal court time. This calculation yields an amount of $8,760.00. The Government does not challenge either Mr. Bryant's hours or his hourly rate.

The question for us is whether we use a multiplier to enhance this award based on the favorable results Mr. Bryant obtained for Mr. Raffin. We think a multiplier of two times the lodestar is reasonable. In cases where a fee must be determined, courts "consider the time and labor required, the skill required, whether the fee is fixed or contingent, the amount involved and the result obtained, the experience, reputation and ability of the attorney, awards in similar cases, and the risk of loss." *Hussar-Nelson v. Barnhart*, No. 99 C 0987, 2002 WL 31664488 (N.D.Ill., Nov. 22, 2002) (citing *McGuire v. Sullivan*, 873 F.2d 974, 983 (7th Cir. 1989)). *See also Gisbrecht*, 535 U.S. at 798-99 (citing *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975) and discussing, *inter alia*, these factors as traditional lodestar for method considerations). These factors inform our judgment about whether enhancing the lodestar amount is reasonable, and in this case, all of these factors point toward enhancement that doubles the award Mr. Bryant would normally receive for non-contingent work.

Our rationale for multiplying the lodestar fee by a factor of two is based primarily on our recognition that Mr. Bryant persevered for nearly a decade to obtain for Mr. Raffin a very large award of past due benefits. This work was completely contingent in nature, and thus the time spent on this case could have yielded nothing. Moreover, although over 90 hours was spent in the agency, we know that Mr. Bryant's maximum fee award for that work is limited by statute to $5,300.00. Although we cannot award fees for agency work, the work done in this Court was an important link

to the successful results obtained in the agency. Thus, we think it is reasonable to enhance the fees available in federal court under Section 406(b) to compensate Mr. Bryant for the total success of his case, especially since the amount of fees available under Section 406(a) is relatively low compared to the number of hours he spent there. Put differently, because Section 406 operates as a continuous whole (despite its two parts) for purposes of capping fees at 25 percent, we think that some enhancement of the Section 406(b) award is justified given the important role the sentence four remand played in obtaining the favorable result in the SSA.

Mr. Bryant seeks a recovery of a greater amount, the full 25 percent of the past-due benefits award. We find that an award of that amount is inappropriate here for several reasons.

*First,* Mr. Bryant only spent, by his own estimates, 21.9 hours in federal court, as compared to over 90 in administrative proceedings. Most of this time was spent drafting a summary judgment motion. And, although this motion was successful in persuading the government to voluntarily agree to a sentence four remand, that stipulated judgment had the effect of reducing the number of hours Mr. Bryant spent in federal court to obtain the remand order (*i.e.*, Mr. Bryant did not need to charge Mr. Raffin for a reply memorandum).

*Second,* the result Mr. Bryant obtained was so "excellent" that the amount of past due benefits in this case is extremely large. Thus, an award of 25 percent of past due benefits in this case would result in an extremely large fee award ($34,887.65) in proportion to the amount of time spent in federal court (21.9 hours). Although the amount of time Mr. Bryant spent in administrative proceedings over the last decade is fairly large (over 94 hours), and the cap on fees under Section 406(a) ($5,300.00) makes his fee for that time relatively small in comparison to that time commitment, the governing statute only gives this Court authority to award attorneys' fees for time

11

spent in the district court; we are not permitted to award fees for time spent before the Social Security Administration. *See* 42 U.S.C. § 406(a). *See also Brown v. Barnhart*, 270 F.Supp.2d 769, 771 (W.D.Va. 2003). Given the disparity between the large number yielded by 25 percent of Mr. Raffin's past due benefits ($34,887.65) and the number of hours Mr. Bryant spent in federal court (21.9), we are left with the firm impression that the percentage of past-due benefits that Mr. Raffin must surrender to Mr. Bryant from his own pocket must be reduced to be reasonable (despite Mr. Raffin's apparent willingness in his affidavit to give Mr. Bryant this sum).[3]

**B.**

Next we turn to the EAJA award. As indicated above, the Government does not contest the requested sum of $3,435.00, which represents an hourly rate of $156.85 for 21.9 hours of federal court work. Although an analysis of "special factors" must be done to justify an increase, in light of the lack of contest by the Government together with the excellent results Mr. Bryant achieved – namely, a voluntary remand that saved the Court and the parties time and money – we think such a modest increase in the hourly fee is justified, especially given prevailing market rates in Chicago.

**C.**

Accordingly, the calculation we use to arrive at Mr. Bryant's fee award is as follows. *First,* we start with the lodestar amount of $8,760.00 ($400 x 21.9 hrs.); we then we multiply that amount by two to reach $17,520.00 as the Section 406(b) award. *Second,* we check this number against the past-due benefits award, to make sure that the sum of the total award under Sections 406(a) and (b)

---

[3]We note that even had there been in place a contingency fee agreement, we would have reduced Mr. Bryant's attorneys' fees for his work in this Court to an amount substantially below the 25 percent cap amount. "If the benefits are large in comparison to the amount of time counsel spent on the case, a downward adjustment is . . . in order." *Gisbrecht*, 535 U.S. at 808.

12

does not exceed the 25 percent cap of $34,887.65. These combined awards fall within that cap ($17,520.00 + 5,300.00 = $22,820.00 is less than $34,887.65). *Third,* we offset the Section 406(b) award of $17,520.00 by the $3,435.00 EAJA award, which is payable by the Government out of the public fisc, not from Mr. Raffin's pocket.

Accordingly, we award a total of $17,520.00 pursuant to Section 406(b). However, only $14,085.00 is payable by Mr. Raffin to Mr. Bryant from his past-due benefits. The remaining $3,435.00 is payable by the Government pursuant to the EAJA.

## **CONCLUSION**

IT IS ORDERED that the Clerk of Court grant Mr. Bryant's Section 406(b) motion for attorneys fees, EAJA fees and a Rule 58 order (doc. #14), and enter an order awarding attorneys fees to Mr. David A. Bryant, pursuant to 42 U.S.C. § 406(b) in the amount of $17,520.00, payable from the past-due benefits due and owing to Mr. Raffin. Concomitantly, the Clerk is directed to enter an order awarding attorneys fees and costs to Mr. Raffin, as the prevailing party in this civil action, under the EAJA, 28 U.S.C. § 2412 in the amount of $3,435.00. These EAJA fees are payable by the Government to Mr. Raffin and should be used as an offset to the Section 406 award of $17,520.00. Any escrows containing funds from Mr. Raffin's past-due benefits which were established pending resolution of this motion should be dissolved; the difference between the Section 406(b) award – as reduced by the EAJA award – and those sums in escrow should therefore be refunded to Mr. Raffin immediately.

Finally, IT IS FURTHER ORDERED that the Clerk enter a Rule 58 judgment *nunc pro tunc*, thereby terminating this case in favor of Mr. Raffin, pursuant to the Court's December 6, 2001 Order remanding this case to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g).

ENTER:

/s/ Sidney I. Schenkier

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**Dated: May 31, 2005**